

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00080-CV

IN THE INTEREST OF K.N.M.M., A CHILD

On Appeal from the 100th District Court
Donley County, Texas
Trial Court No. DCPS-14-7079, Honorable Stuart Messer, Presiding

July 13, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, L.N.W.B., is the mother of the child K.N.M.M.[1] and had her parental rights to K.N.M.M. terminated by final judgment of the trial court on the 20th day of February, 2015. L.N.W.B. has appealed, contending that the evidence is insufficient to find by clear and convincing evidence any of the predicate acts alleged by the Department of Family and Protective Services or, that termination of L.N.W.B.'s parental rights is in the best interest of K.N.M.M. We will affirm the trial court's decision to terminate L.N.W.B.'s parental rights.

---

[1] To protect the confidentiality of the minor child, we will refer to the child and mother by initials only. TEX. R. APP. P. 9.8

Factual and Procedural Background

K.N.M.M. came into the conservatorship of the Department as the result of a referral received on October 17, 2013, alleging that L.N.W.B.'s boyfriend had physically abused the child while spanking her. At the time of the intake, K.N.M.M. had been taken to the home of her maternal great aunt and uncle by L.N.W.B. A petition to terminate L.N.W.B.'s parental rights was later filed on February 20, 2015, and K.N.M.M. was officially placed with the maternal great aunt and uncle following the filing of the petition. K.N.M.M. continued to reside with them up until and through the final hearing. On the date of the final hearing, L.N.W.B. was incarcerated in the Institutional Division of the Texas Department of Criminal Justice. She was represented by counsel at the final hearing.

At the time of the filing of the petition, L.N.W.B. had a history of disappearing from K.N.M.M.'s life for months at a time and leaving the child with the maternal great aunt and uncle. Additionally, the record reflects that L.N.W.B. had a history of drug abuse, lack of employment, and lack of a stable home. The petition alleged that L.N.W.B.'s parental rights should be terminated because she had committed the following predicate acts as outlined in Section 161.001(1) of the Texas Family Code:

(1) voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return (Subsection A);

(2) voluntarily left the child alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months (Subsection B);

(3) voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months (Subsection C);

(4) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child (Subsection D);

(5) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child (Subsection E);

(6) failed to support the child in accordance with the mother's ability during a period of one year ending within six months of the date of the filing of the petition (Subsection F);

(7) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights (Subsection K);

(8) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department for not less than six months and: (1) the Department has made reasonable efforts to return the child to the mother; (2) the mother has not regularly visited or maintained significant contact with the child; (3) the mother has demonstrated an inability to provide the child with a safe environment (Subsection N); and

(9) failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child (Subsection O).

TEX. FAM. CODE ANN. § 161.001(1)(A–F), (K), (N–O) (West 2014).[2]

Trial was held to the court, without a jury, on February 6, 2015. The trial court heard the testimony concerning the facts that prompted the removal of the child from L.N.W.B.'s custody. Jessica Lepe was the conservatorship worker who testified on behalf of the Department. Lepe testified that, prior to the instant case, she was aware

---

[2] Further reference to the Texas Family Code will by reference to "Section ____," "section ____," or "§ ____."

3

of instances where L.N.W.B. left the child with the maternal great aunt and uncle for periods between three and six months. L.N.W.B. would tell the maternal great aunt and uncle that she was simply not able to care for the child. Regarding the incident involving the spanking by L.N.W.B.'s boyfriend, Lepe testified that L.N.W.B. knowingly allowed K.N.M.M. to remain in surroundings or conditions that endangered her physical or emotional well-being. Lepe testified about the family service plan that had been developed for L.N.W.B. and that L.N.W.B. was aware of the plan and its contents. When discussing L.N.W.B.'s compliance with the service plan, Lepe explained that L.N.W.B. did not stay in contact with the Department and, thus, failed to meet the requirement that she notify the Department within five days of changes in her contact information. Likewise, Lepe testified that L.N.W.B. was ordered to submit to random drug testing and wholly failed to do so. L.N.W.B. submitted to one scheduled drug test at the beginning of the case and tested positive for methamphetamine. In addition, L.N.W.B. was ordered to be tested after one of the status hearings and failed to show up for the testing. L.N.W.B. was ordered to undergo a psychological evaluation and, although an appointment was made for her, L.N.W.B. failed show up and be evaluated. L.N.W.B. never scheduled her ordered drug and alcohol assessment. In summation on this area, Lepe testified that L.N.W.B. failed to comply with the provisions of the court order that specifically established actions necessary for her to retain or regain custody of K.N.M.M.

At the conclusion of the testimony, the trial court terminated L.N.W.B.'s parental rights by finding "beyond a reasonable doubt" that L.N.W.B. had violated the following subsections of section 161.001(1). Subsection D, endangering the child; Subsection E,

4

placing the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; Subsection F, failing to support the child in accordance with her ability; Subsection N, constructively abandoning the child who was in the temporary conservatorship of the Department; and Subsection O, failing to comply with the provisions of a court order that specifically established the actions necessary for the mother to regain custody of K.N.M.M. Further, the trial court also found "beyond a reasonable doubt" that termination of L.N.W.B.'s parental rights would be in K.N.M.M.'s best interest. § 161.001(2).

L.N.W.B. now appeals the trial court's findings regarding the predicate acts and whether termination of her parental rights is in the best interest of K.N.M.M. L.N.W.B. contends that the evidence was insufficient to support any of the trial court's findings regarding predicate acts or best interest of the child. We disagree and will affirm.

Standard of Review

The natural right existing between parents and their children is of constitutional dimensions. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. That being so, we are required to strictly scrutinize termination proceedings. *In re G.M.,* 596 S.W.2d 846, 846 (Tex. 1980). However, parental rights are not absolute, and the emotional and physical

5

interests of a child must not be sacrificed merely to preserve those rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes both: (1) one or more acts or omissions enumerated under Section 161.001(1), and (2) that termination of the parent-child relationship is in the best interest of the child. § 161.001. Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. *See In re C.H.,* 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under Section 161.001. *See In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's order of termination if legally and factually sufficient evidence supports any one of the grounds found in the termination order, provided the record shows that it was also in the best interest of the child for the parent's rights to be terminated. *See id.*

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002); *see* § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014). This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. *In re C.H.,* 89 S.W.3d at 26.

6

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. *See In re J.F.C.,* 96 S.W.3d at 266. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.,* 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

7

Analysis

<u>Predicate Acts</u>

Although the Department alleged some nine predicate acts it intended to prove to support termination of L.N.W.B.'s parental rights, the trial court found that the Department had provided sufficient evidence to demonstrate that L.N.W.B. had violated the requirements of five of the subdivisions of Section 161.001(1). Because proof of violation of one predicate act is sufficient to support an order of termination, we will concentrate on L.N.W.B.'s compliance with the provisions of the trial court order. *See In re A.V.,* 113 S.W.3d at 362; *see also* § 161.001(1)(O).

The uncontroverted testimony before the trial court was that L.N.W.B. was made aware of the court-ordered family service plan. Further, the trial court heard that L.N.W.B. failed to complete almost all of the requirements of the plan. Specifically, L.N.W.B. did not stay in contact with the Department, failed to submit to random drug testing, failed to take the psychological evaluation that was ordered, and failed to appear for the alcohol and drug assessment. With this evidence before it, the trial court had more than enough evidence to make a finding that, based upon clear and convincing evidence, L.N.W.B. had violated Subsection O of Section 161.001(1). § 101.007; *In re C.H.,* 89 S.W.3d at 26. Accordingly, L.N.W.B.'s contention to the contrary is overruled.

<u>Best Interest</u>

L.N.W.B. argues the trial court committed reversible error in finding that the best interest of K.N.M.M. would be served by terminating her parental rights. This is so,

8

according to L.N.W.B., because the Department failed to offer sufficient evidence to support the finding.

There is a strong presumption that a child's interest is best served by preserving the conservatorship of the parents; however, clear and convincing evidence to the contrary may overcome that presumption. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The Texas Supreme Court has recognized a non-exhaustive list of factors that are pertinent to the inquiry whether termination of parental rights is in the best interest of the child: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* § 263.307 (West 2014) (providing extensive list of factors that may be considered in determining child's best interest). In examining the best interest of the child, we may consider evidence that was also probative of the predicate act or omission. *See In re C.H.*, 89 S.W.3d at 28. The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

The Department need not prove all nine *Holley* factors, and the absence of evidence relevant to some of those factors does not bar a finding that termination is in the child's best interest, especially in the face of undisputed evidence that the parental relationship endangered the child. *See In re C.H.*, 89 S.W.3d at 27. No one *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.) The evidence supporting the predicate grounds for termination may also be used to support a finding that the best interest of the children warrants termination of the parent-child relationship. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

As stated above, the evidence supports the finding by the trial court of the predicate events which supported the termination of L.N.W.B.'s parental rights. This evidence is likewise probative of the best interest of the children. *See In re C.H.*, 89 S.W.3d at 28

The first *Holley* factor is the desire of the child. *See Holley*, 544 S.W.2d at 371–72. When, as in this case, the child is too young or unable to express a desire the trial court may look at the bond between the child and the foster parents to support a finding that the child's desire is to remain with the foster parents. *See In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g). Further a court may consider that the parent in question has spent a minimum amount of time with the child. *See id.* In the case before the Court, the record supports the fact that K.N.M.M. has bonded with her maternal great aunt and uncle. In fact, the record clearly

demonstrates that the child has spent most of her life with them. This supports the trial court's finding that termination is in the best interest of the child.

The second and third *Holley* factors are the emotional and physical needs of the child now and in the future and the emotional and physical danger to the child now and in the future. *See Holley*, 544 S.W.2d at 371–72. We will address these factors together.

We begin with a consideration of L.N.W.B.'s past conduct. We begin here because the trial court could measure L.N.W.B.'s future conduct by her past conduct. *See In re D.S.*, 333 S.W.3d at 384. Initially, we observe that the Department received a referral about physical abuse directed at K.N.M.M. by L.N.W.B.'s then-boyfriend. Added to this scenario is L.N.W.B.'s continued course of leaving K.N.M.M. with her maternal great aunt and uncle for months at a time. During those periods, L.N.W.B. had no contact with the child at all. To these facts, we add that L.N.W.B. has a history of drug use. The record reflects that L.N.W.B. took an initial drug screen and tested positive for methamphetamine. After the initial test, L.N.W.B. failed to appear for any other drug testing. Then, there is the issue of L.N.W.B.'s failure to complete the services required in order to militate against removal. This action indicates that L.N.W.B. has no real concern for any type of relationship with her child. Finally, at the time of the final hearing, L.N.W.B. was incarcerated on a probation revocation and was not scheduled to be released until December 2016. From this testimony, the trial court had sufficient evidence to conclude that the child's emotional and physical needs now and in the future could best be served by terminating L.N.W.B.'s parental rights. This same evidence supports the trial court's finding that returning K.N.M.M. to L.N.W.B. was to

risk emotional and physical danger now and in the future to the child. *See id; see also Holley*, 544 S.W.2d at 371–72.

As to the *Holley* factor regarding the stability of the placement as opposed to the home, the above referenced evidence shows that the child has not had any stability except when she stayed with her maternal great aunt and uncle. Further, according to the Department's witnesses, K.N.M.M. has bonded with them as they have served as her foster parents. Thus, this evidence supports that termination of L.N.W.B.'s parental rights is in the best interest of the child.

Based upon our review of the record, the trial court had ample evidence to find that termination of L.N.W.B.'s parental rights were in the best interest of K.N.M.M. *In re R.R.,* 209 S.W.3d at 116. L.N.W.B.'s contentions to the contrary are overruled.

## Conclusion

Having overruled all of L.N.W.B.'s issues, we affirm the trial court's judgment terminating L.N.W.B.'s parental rights.

Mackey K. Hancock
Justice